UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

BOOST OXYGEN, LLC, a Connecticut
Limited Liability Company,

                    Plaintiff,

v.

OXYGEN PLUS, INC., a Minnesota
Corporation,

                    Defendant.

Case No. 17-CV-5004 (PJS/DTS)

ORDER

      Robert Neuner, HOFFMANN & BARON, LLP; Barry M. Landy, Esther
      Agbaje, and Jan M. Conlin, CIRESI CONLIN LLP, for plaintiff.

      Loren L. Hansen, Brian A. Dillon, and Dion Farganis, LATHROP GPM
      LLP, for defendant.

      In November 2017, plaintiff Boost Oxygen, LLC ("Boost") brought suit against

defendant Oxygen Plus, Inc. ("Oxygen Plus") for infringement of a design patent and

trade dress. The lawsuit was meritless, as Oxygen Plus's product clearly did not

infringe Boost's patent or trade dress. But Oxygen Plus did not have a lot of money to

spend on lawyers, and the lawyer whom it did hire apparently gave it questionable

advice.[1] Based on that questionable advice, Oxygen Plus entered into a settlement

agreement and consent judgment. Oxygen Plus agreed that its product infringed

_____

      [1]To be clear: The questionable advice came from a former attorney, not from
Lathrop GPM, which now represents Oxygen Plus.

Boost's patent and trade dress (even though it didn't), and Oxygen Plus agreed to redesign its product. Oxygen Plus also agreed to be enjoined from further infringement of Boost's patent or trade dress.

Oxygen Plus redesigned its product and brought it to market. The redesigned product is not much different from the original product; indeed, on quick glance, it is difficult to tell the two apart. Boost now alleges that the redesigned product infringes its patent and trade dress, and it asks this Court to hold Oxygen Plus in contempt. Because the consent judgment orders Oxygen Plus not to infringe Boost's patent or trade dress—and because Oxygen Plus's redesigned product does not infringe Boost's patent or trade dress—the Court declines to hold Oxygen Plus in contempt.

## I. BACKGROUND

Boost and Oxygen Plus both sell lightweight, portable oxygen canisters. ECF No. 1 at ¶¶ 1, 3. The oxygen canisters can serve as a source of supplemental oxygen for runners, hikers, and others engaged in intense aerobic activity. ECF No. 79-3 at 39. The oxygen canisters consist of two parts: (1) a tubular portion in which oxygen is stored and (2) a "mask" that attaches to the top of the tubular portion and allows the user to breathe in oxygen. ECF No. 1 at ¶ 1. This lawsuit concerns masks.

Boost owns U.S. Design Patent D610,250 ("the '250 patent"), which covers a design for an oxygen-canister mask.  ECF No. 28 at 1;[2] ECF No. 1-1.  Boost sued Oxygen Plus alleging (among other things) that one of Oxygen Plus's masks (the "O+ Biggi mask") infringed the '250 patent and Boost's trade dress.  *See* ECF No. 1.  Depicted below (from left to right) are Boost's patented mask design, Boost's commercial embodiment of that design, and Oxygen Plus's allegedly infringing O+ Biggi mask:



Oxygen Plus decided that, "[r]ather than spend a small fortune on attorneys," it would enter into a settlement agreement and consent judgment.  ECF No. 80-6 at 3.  As part of the deal, Oxygen Plus agreed that its O+ Biggi mask infringed the '250 patent and Boost's trade dress.  ECF No. 28 at 1, 3.  Oxygen Plus also "agreed to change the design of the O+ Biggi mask in a way that avoids infringement of [the] '250 Patent and the trade dress of Boost Oxygen's oxygen canisters."  *Id.* at 3.  Oxygen Plus was

---

[2]The Court cites to this document's internal pagination.

"enjoined from further infringing the '250 Patent"and from using any "product design that is confusingly similar to the trade dress of Boost Oxygen's oxygen mask."  *Id.* at 2, 3.  There was one exception:  Oxygen Plus was granted a "limited term license" to sell a limited quantity of its O+ Biggi masks for a limited amount of time, as long as it paid substantial royalties to Boost.  *Id.* at 2.

Oxygen Plus was not well advised during the underlying litigation.  Had Oxygen Plus filed a motion to dismiss, that motion would almost certainly have been granted, as Oxygen Plus's original O+ Biggi mask differed in significant respects from the patented design.  Instead of moving to dismiss the lawsuit, however, Oxygen Plus entered into a consent judgment in which it agreed that its O+ Biggi mask infringed the '250 patent and Boost's trade dress.  Oxygen Plus also agreed to make royalty payments to Boost totaling $150,000—money that could have been used to pay an attorney to bring a motion to dismiss.  ECF No. 28 at 2; ECF No. 82 at 1.[3]

Oxygen Plus further agreed to redesign its O+ Biggi mask—and it did so without meaningful guidance or protection.  ECF No. 28 at 3.  The consent judgment provided that:

> Oxygen Plus has agreed to change the design of the O+ Biggi mask in a way that avoids infringement of Boost Oxygen's '250 Patent and the trade dress of Boost Oxygen's oxygen canisters.  A rough sketch of the redesigned O+ Biggi

---

[3]The Court cites to this document's internal pagination.

mask is shown in Exhibit B.  It is anticipated that in its final form, the redesigned O+ Biggi mask will look even more like the prior art and less like Boost Oxygen's patented mask design.  With this understanding, Boost Oxygen has agreed that the redesigned mask would not infringe its '250 Patent and/or its trade dress.

ECF No. 28 at 3.  Curiously, however, the "rough sketch of the redesigned O+ Biggi mask" (which appears below) consisted of a single sketch, from a single angle, which essentially depicted the original O+ Biggi mask with slightly more rounded sides.  *Id.* at Ex. B.



Basically, then, Oxygen Plus agreed to make a slight change to its O+ Biggi mask—and vaguely said that it "anticipated" making other (unspecified) changes that would cause the redesigned mask to look more like (unspecified) prior art—and Boost agreed that this redesigned mask would not infringe the '250 patent or its trade dress.

As promised, Oxygen Plus redesigned its mask, and at considerable expense. ECF No. 40-1.  Oxygen Plus made the sides of the redesigned mask slightly more rounded, precisely as called for by the rough sketch.  Oxygen Plus also made a couple

of other minor changes.  On the whole, though, the redesigned O+ Biggi mask looks a

lot like the original O+ Biggi mask.  The two masks appear below, with the original

mask on the left and the redesigned mask on the right.



Boost now alleges that Oxygen Plus has violated the consent judgment by

continuing to infringe Boost's patent and trade dress.  Boost asks the Court to hold

Oxygen Plus in contempt.

## II.  ANALYSIS

### A.  *Contempt for Continued Patent Infringement*

Boost asks that Oxygen Plus be held in contempt for continuing to infringe the '250 patent after the entry of a permanent injunction barring such infringement.  Under *TiVo Inc. v. EchoStar Corp.*, Boost "must prove both that [1] the newly accused product is not more than colorably different from the product found to infringe and that [2] the newly accused product actually infringes."  646 F.3d 869, 882 (Fed. Cir. 2011) (en banc).  Both elements must be proven by clear-and-convincing evidence.  *Id.* at 883; *see also Acosta v. La Piedad Corp.*, 894 F.3d 947, 951 (8th Cir. 2018).

The parties agree that the redesigned O+ Biggi mask is not more than colorably different from the original O+ Biggi mask.  The question, then, is whether the redesigned mask "actually infringes" the '250 patent.  *TiVo Inc.*, 646 F.3d at 882.  The parties disagree about whether Oxygen Plus is collaterally estopped from arguing that its redesigned mask does not infringe the '250 patent.  The parties also disagree about how the Court should conduct the infringement analysis.  The Court addresses these issues in turn.

### 1.  Collateral Estoppel

Boost contends that Oxygen Plus is collaterally estopped from arguing that its redesigned mask does not infringe the '250 patent.  Under the doctrine of collateral

estoppel (or "issue preclusion"), a party may be estopped from litigating a particular

issue if five things are true:

> (1)    the party sought to be precluded in the second suit must have been a
>        party, or in privity with a party, to the original lawsuit;
>
> (2)    the issue sought to be precluded must be the same as the issue involved in
>        the prior action;
>
> (3)    the issue sought to be precluded must have been actually litigated in the
>        prior action;
>
> (4)    the issue sought to be precluded must have been determined by a valid
>        and final judgment; and
>
> (5)    the determination in the prior action must have been essential to the prior
>        judgment.

*Estrada-Rodriguez v. Lynch*, 825 F.3d 397, 402 (8th Cir. 2016).

Boost cannot satisfy the second or third elements. The issue now in dispute is

whether the *redesigned* mask—a product that did not even exist at the time of the "prior

action"—infringes the '250 patent. That issue is not the same as the issue involved in

the "prior action," which was whether the *original* mask infringed the '250 patent. And

obviously, the question of whether the redesigned mask infringes the '250 patent was

not "actually litigated" in the "prior action."

It cannot be true (as Boost argues) that because the consent judgment forecloses

Oxygen Plus from relitigating the question of whether the original O+ Biggi mask

infringes the '250 patent, and because the redesigned O+ Biggi mask is not more than

colorably different from the original Biggi mask, Oxygen Plus is necessarily foreclosed from litigating the question of whether the redesigned mask infringes the '250 patent. If Boost were correct, then the second part of the two-part *TiVo* test would serve no purpose. On the one hand, if a redesigned product *were* more than colorably different from the admittedly infringing product, that would end the inquiry; the court would not need to address the issue of actual infringement. On the other hand, if a redesigned product were *not* more than colorably different from the admittedly infringing product, then (under Boost's theory) the alleged infringer would be precluded from arguing that its new product does not infringe. Again, the court would never reach the question of actual infringement. In short, if Boost is correct, no court would *ever* apply the second step of the *TiVo* test. Clearly, then, Boost is not correct.[4] *See, e.g., Glob. Ground*

_____

[4]The Court's conclusion finds support in *Lund Industries, Inc. v. GO Industries, Inc.*, 938 F.2d 1273 (Fed. Cir. 1991). In *Lund*, the parties entered into a settlement agreement and consent judgment in which the defendant admitted that its product infringed the plaintiff's design patent. *Id.* at 1274. The defendant redesigned its product, but the redesigned product was not more than colorably different from the infringing product. *Id.* at 1274–75. Because the two products were not more than colorably different, the district court granted a preliminary injunction to the plaintiff—finding that the plaintiff was likely to succeed in showing that the defendant's redesigned product actually infringed the patent. *Id.*

The Federal Circuit reversed. The Federal Circuit found that "the trial court erred in finding a likelihood of success on infringement based on a comparison of the new [product] with the [infringing product]." *Id.* at 1275. The court held that, in order to show infringement of a design patent, the ordinary-observer test must be satisfied. *Id.* at 1276. The court further held that the defendant's "prior admission of infringement

(continued...)

*Automation, Inc. v. Orissa Holdings, LLC*, No. 6:15-cv-002 RWS-JDL, 2015 WL 7761089, at *3 (E.D. Tex. Dec. 2, 2015) ("Under GGA's interpretation, a plaintiff would have to do no more than simply prove that there are no significant differences between the [admittedly infringing product and the redesigned] product[] to satisfy the infringement prong under *TiVo*. This Court is reluctant to collapse the two-prong test of *TiVo* as GGA would like. Particularly, the Court is disinclined to decide, on first impression, that *res judicata* can be applied to satisfy the infringement prong of *TiVo* on the facts of this case because to do so would be to effectively have the first prong of *TiVo* swallow the second whole.").

In addition, "[w]here a judgment between parties is entered by consent prior to trial on any issue, no issue may be said to have been fully, fairly or actually litigated." *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 480 (Fed. Cir. 1991) (citations omitted); *see also United States v. Brekke*, 97 F.3d 1043, 1049 (8th Cir. 1996). Thus, "the general rule is that a consent judgment has no issue-preclusive effect unless it is clearly shown that the parties intended to foreclose a particular issue in future litigation." *Brekke*, 97 F.3d at 1049 (citations omitted). The question is essentially one of contract interpretation.

---

[4](...continued)
on a different, albeit similar design does not justify departure from a proper [ordinary-observer] infringement analysis." *Id.* at 1276.

The consent judgment resolves the question of whether the original O+ Biggi mask infringes the '250 patent and precludes Oxygen Plus from relitigating *that* issue. But nothing in the consent judgment precludes either party from litigating whether the redesigned O+ Biggi mask infringes the '250 patent. To the contrary, the consent judgment explicitly says that Oxygen Plus will redesign its mask. And despite the fact that the consent judgment seems to contemplate that the redesigned mask will closely resemble the original mask, Boost conceded that "the redesigned mask would not infringe the '250 patent." ECF No. 28 at 3. If anything, the consent judgment seems to preclude *Boost* from arguing that the redesigned mask *does* infringe the '250 patent. The consent judgment certainly does not preclude *Oxygen Plus* from arguing that the redesigned mask does *not* infringe.

This result is not unfair to Boost, as Boost complains. The consent judgment to which Boost stipulated prohibits Oxygen Plus from *infringing the '250 patent*. Boost knew that Oxygen Plus would redesign its mask, and Boost even signed off on a rough sketch of that redesigned mask. Boost also knew that, if it wanted to hold Oxygen Plus in contempt in connection with the redesigned mask, Boost would have to prove infringement. Boost could have stipulated to a consent judgment that barred Oxygen Plus from selling a mask that was *not more than colorably different* from the original O+ Biggi mask. Had Boost done that, then Boost would not have to prove infringement,

and the Court would now be holding Oxygen Plus in contempt.[5]  But Boost is stuck

with the consent judgment to which it stipulated, and that judgment does not preclude

Oxygen Plus from litigating the issue of whether its redesigned mask infringes the

'250 patent.

> 2.  Limit the Infringement Analysis To the Modified Elements

Boost next argues that, in determining whether Oxygen Plus's redesigned mask

"actually infringes" the '250 patent, the Court may not compare the redesigned mask as

a whole to the patented design as a whole.  Instead, says Boost, the Court must identify

the elements of the new mask that were modified and compare those modified elements

to the corresponding elements of the patented design.  ECF No. 74 at 20–22; ECF No. 84

at 3–7.[6]

Boost cites a number of judicial decisions in support of its argument.  What Boost

fails to recognize, however, is that all of those decisions (save one) involve *utility*

patents.  But determining whether a *utility* patent has been infringed is a much different

---

[5]*See, e.g., Hubbard/Downing, Inc. v. Kevin Heath Enters.*, 1:10-cv-1131-WSD, 2013
WL 12239523, at *4 (N.D. Ga. May 30, 2013) (finding that *TiVo*—and its actual-
infringement requirement—was not applicable in a contempt proceeding when the
consent judgment did not bar the defendants from infringing the plaintiff's patent, but
rather barred the defendants from producing a particular product of theirs or any
product not "more than colorably different from" their product).

[6]The Court cites to these documents' internal pagination.

endeavor than determining whether a *design* patent has been infringed.  Boost's method is suitable for the former, but not for the latter.

Utility patents typically include multiple claims, and claims typically include multiple limitations.  An accused product does not infringe a utility patent unless it meets every one of the limitations of a particular claim.  In essence, determining whether there is infringement of a utility patent requires the court to compare the *elements* of the accused device to the *elements* of the patented device (as expressed in the limitations of the claims).  When an accused product is adjudged to have infringed (in either a contested or a stipulated judgment), the judgment is necessarily a finding that the accused product meets every limitation of a particular claim.  When a defendant modifies the infringing product, there is no reason for the court to consider whether the *unmodified* elements continue to meet their corresponding claim limitations; that has already been determined.  Instead, the court need only look at the elements that have been modified and ensure that they continue to meet their corresponding claim limitations.

This approach is utterly unsuited to determining whether a design patent has been infringed.  A design patent protects the overall appearance of an object.  A design patent does not describe claim limitations, as does a utility patent; instead, a design patent consists mostly of drawings.  The '250 patent is typical; six and one half of its

seven pages consist of drawings.  ECF No. 1-1.  The '250 patent contains a single claim.
In its entirety, that claim reads:  "The ornamental design for a mask, as shown and
described."  *Id.* at 1.

Infringement of a design patent is not determined by breaking down an accused
device into elements and comparing those elements to corresponding limitations in a
claim.  Rather, a court must apply the "ordinary observer test."  *Egyptian Goddess, Inc. v.
Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc).  The ordinary-observer test asks
whether "'an ordinary observer, giving such attention as a purchaser usually gives,
[would find that the] two designs are substantially the same[.]'"  *Id.* at 670 (quoting
*Gorham Co. v. White*, 81 U.S. 511, 528 (1871)).  Crucially, the ordinary-observer test
requires an "examination of the design *as a whole*."  *Crocs, Inc. v. Int'l Trade Comm'n*, 598
F.3d 1294, 1302 (Fed. Cir. 2010) (emphasis added).

Thus, the approach urged by Boost—identifying the elements of the accused
device that have been modified, and comparing those elements to corresponding claim
limitations—will simply not work with design patents.[7]  Again, determining

---

[7]Boost cites only one case in which its approach was purportedly applied in
determining whether a design patent had been infringed:  *Lucasey Manufacturing, Inc. v.
Cuelho*, Civ. A. No. 91-4008, 1994 WL 502021 (D.N.J. Sept. 12, 1994).  *Lucasey* involved
television mounting brackets.  *Id.* at *1.  The defendant admitted that his bracket
infringed the plaintiff's design patent and stipulated to entry of a consent judgment.  *Id.*
After the defendant redesigned his bracket, the plaintiff moved to hold him in
contempt, arguing that the redesigned bracket infringed the design patent.  *Id.*  As Boost
(continued...)

infringement of a design patent involves comparing the *overall* appearance of the

accused device to the *overall* appearance of the patented design.[8]   "Where the claimed

_____

[7](...continued)
points out, the *Lucasey* court remarked at one point that it "is bound by the defendant's
admission . . . that his first bracket infringes on the plaintiff's patent" and "[t]herefore
. . . only examines modifications between the first . . . bracket and the [redesigned]
bracket."  *Id.* at *1 n.1.

    Boost's reliance on *Lucasey* is misplaced, however.  In deciding whether the
redesigned bracket infringed the design patent, *Lucasey* applied the ordinary-observer
test, comparing the "overall appearance" of the defendant's redesigned bracket to the
"overall appearance" of the commercial embodiment of the plaintiff's patented design
and finding the two brackets to be "substantially similar."  *Id.* at *2.  The court went on
to say that, under then-governing Federal Circuit precedent, the court could not just
rely on the ordinary-observer test, but also had to apply the "point of novelty" test.  *Id.*
*That* test required the court to "dissect the brackets into a plurality of features" and
compare the modified features of the redesigned bracket to the corresponding features
of the patented design.  *Id.*

    The problem for Boost is that the point-of-novelty test was abandoned by the
Federal Circuit after *Lucasey* was decided.  In *Egyptian Goddess*, the Federal Circuit
(sitting en banc) held that "the 'ordinary observer' test should be the *sole* test for
determining whether a design patent has been infringed."  543 F.3d at 678 (emphasis
added).  Thus, *Lucasey* is entirely consistent with this Court's view, as *Lucasey*
recognized that applying the ordinary-observer test requires a court to compare the
"overall appearance" of the redesigned product with the "overall appearance" of the
patented design.

    [8]*See Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 942 F.3d
1119, 1131 (Fed. Cir. 2019) (finding "the district court's piecemeal approach, considering
only if design elements independently affect the overall visual impression that the
designs are similar," to be "at odds with" the ordinary-observer test, which "requir[es]
the factfinder to analyze the design as a whole" (citation omitted)); *Ethicon Endo-*
*Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015) (stating that differences
between the patented design and the allegedly infringing design must be evaluated "as
(continued...)

and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc.*, 796 F.3d at 1335 (citation omitted).

Here, Oxygen Plus's redesigned O+ Biggi mask and Boost's patented design are plainly dissimilar. Boost's patented design features a draping shoulder, a slanted mouth opening, and an angular neck portion. Oxygen Plus's redesigned mask shares none of those features. Instead of a draping shoulder, Oxygen Plus's mask features a narrow ring that attaches to the top of the oxygen canister. Instead of a slanted mouth opening, Oxygen Plus's mask features a flat mouth opening. And instead of an angular neck portion, Oxygen Plus's mask features a hemispherical neck portion. A side-by-side comparison of the patented design and the redesigned mask is shown below:

---

[8](...continued)
a whole, and not in the context of separate elements in isolation. . . . An element-by-element comparison, untethered from application of the ordinary observer inquiry to the overall design, is procedural error." (citation omitted)).



The Federal Circuit has made clear that "[i]nfringement is the *sine qua non* of violation of an injunction against infringements."  *KSM Fastening Sys., Inc. v. H.A. Jones Co., Inc.*, 776 F.2d 1522, 1528 (Fed. Cir. 1985).  Indeed, "devices which could not be enjoined *as infringements* on a separate complaint cannot possibly be deemed enjoined *as infringements* under an existing injunction in contempt proceedings."  *Id.* (citation omitted).  The consent judgment entered in this case does not enjoin Oxygen Plus from using a redesigned mask that differs only slightly from its original mask; instead, the consent judgment enjoins Oxygen Plus from infringing the '250 patent.  The redesigned O+ Biggi mask does not infringe the '250 patent, and thus the Court will not hold Oxygen Plus in contempt.

#### B. Contempt for Continued Trade-Dress Infringement

In addition to enjoining Oxygen Plus from infringing the '250 patent, the consent judgment also enjoins Oxygen Plus "from using the Boost Oxygen trade dress or any other product design that is confusingly similar to the trade dress of Boost Oxygen's oxygen mask." ECF No. 28 at 3. Boost alleges that Oxygen Plus's redesigned mask infringes Boost's trade dress and asks the Court to hold Oxygen Plus in contempt. Once again, Boost has the "burden of proving, by clear and convincing evidence, that [Oxygen Plus] violated a court order." *Chi. Truck Drivers v. Brotherhood Lab. Leasing*, 207 F.3d 500, 505 (8th Cir. 2000) (citation omitted).

To establish trade-dress infringement, a plaintiff must show that its trade dress is protectable, meaning that the trade dress (1) is distinctive, or has secondary meaning, and (2) is nonfunctional. *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018); *Jalin Realty Cap. Advisors, LLC v. A Better Wireless, NISP, LLC*, 917 F. Supp. 2d 927, 939 (D. Minn. 2013). The plaintiff must then show that the defendant's trade dress is confusingly similar to the plaintiff's protectable trade dress. *Munro*, 899 F.3d at 589.

Oxygen Plus argues that Boost has not established that its trade dress is protectable. ECF No. 82 at 23–24. That is true, but Oxygen Plus may not, in this contempt proceeding, contest the protectability of Boost's trade dress. That issue was resolved by the consent judgment. Now, "the court must simply determine whether the

terms of the injunction were violated by the new [product] version chosen by [Oxygen Plus]."  5 J. McCarthy, Trademarks and Unfair Competition § 30.18, p. 30-68 (5th ed. 2019) (hereinafter, "McCarthy").  In other words, the Court need only decide whether Oxygen Plus's redesigned mask is "confusingly similar" to Boost's trade dress.[9]

"The trade dress of a product 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.'"  *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 132 (8th Cir. 1986) (citation omitted).  In cases in which "the plaintiff has defined the trade dress as the total image or overall impression of plaintiff's product," the court must compare "this composite . . . with the corresponding image or impression of defendant's product."  1 McCarthy, § 8.1, p. 8-7.  "If the accused trade dress is simply not similar enough that confusion is likely, then no infringement has occurred."  *Id.* at § 8.15, p. 8-97.

---

[9]*See Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997) ("'When enforcing injunctions that enjoin use of any mark confusingly similar to the protected mark, courts should . . . simply evaluate whether or not the new mark is confusingly similar to the protected mark.'" (quoting *Wella Corp. v. Wella Graphics, Inc.*, 37 F.3d 46, 48 (2d Cir. 1994)); *Eskay Drugs, Inc. v. Smith, Kline & French Labs.*, 188 F.2d 430, 431 (5th Cir. 1951) (holding that, because the defendant had previously admitted infringement in the consent decree, the only issue before the court was whether its new name ("Enkay") was a colorable imitation of the plaintiff's protected trademark ("Eskay")).

Boost's mask (on the left) and Oxygen Plus's redesigned mask (on the right) are depicted below:



Clearly, Oxygen Plus's redesigned mask is not confusingly similar to Boost's mask.  As the Court has already explained, the two masks have completely different designs.  Among the most prominent features of Boost's mask are a draping shoulder, a slanted mouth opening, and an angular neck portion; Oxygen Plus's redesigned mask shares none of those features.  Indeed, it is telling that Boost does not even attempt to compare Oxygen Plus's redesigned mask to *Boost's* mask; instead, Boost compares Oxygen Plus's *redesigned* mask to Oxygen Plus's *original* mask and argues that *those* two masks are "confusingly similar."  ECF No. 74 at 24; ECF No. 84 at 10.

In focusing only on the similarities between the two Oxygen Plus masks, Boost relies on *Toyo Tire & Rubber Co., Ltd. v. Hong Kong Tri-Ace Tire Co., Ltd.*, 281 F. Supp. 3d 967 (C.D. Cal. 2017).  The plaintiff in *Toyo Tire* sought to hold a defendant in contempt for continued trade-dress infringement in violation of a consent judgment.  *Id.* at 974–77.  The defendant had previously agreed that its tire (the Mark Ma tire) infringed the trade dress of the plaintiff's tire (the OPMT tire).  *Id.* at 975.  The defendant then marketed a new tire that was nearly identical to its Mark Ma tire.  *Id.* at 975–76.  The court decided that, because the defendant had admitted that the Mark Ma tire infringed the plaintiff's trade dress, the court simply needed to decide whether the defendant's new tire was confusingly similar to the defendant's Mark Ma tire.  *Id.* at 985.

The defendant argued that the court could not determine whether the defendant's new tire infringed the plaintiff's trade dress without comparing the new tire to the plaintiff's tire.  *Id.*  The court disagreed, finding that a comparison of the defendant's new tire to the plaintiff's OPMT tire was unnecessary, as the defendant admitted "that the Mark Ma tire infringed on the OPMT trade dress, and as a consequence a tire with a confusingly similar overall appearance to the Mark Ma would also infringe on the OPMT trade dress."  *Id.*  Essentially, the court reasoned that if *a* (the new tire) is confusingly similar to *b* (the Mark Ma tire), and *b* (the Mark Ma tire) is

confusingly similar to *c* (the OPMT tire), then *a* (the new tire) must be confusingly similar to *c* (the OPMT tire).

The Court questions the logic of *Toyo Tire*. "Confusingly similar" does not mean "identical." Thus, *a* can be confusingly similar to *b* even though the two products differ in *x* respects. And *b* can be confusingly similar to *c* even though the two products differ in *y* respects. The difference between *a* and *c* would be *x + y*. In other words, the gap between *a* and *c* could be greater than the gap between *a* and *b* or *b* and *c*. Although two products separated by *x* <u>or</u> *y* might be confusingly similar, two products separated by *x* <u>and</u> *y* might not.

Whether or not *Toyo Tire*'s logic is sound, the Court does not agree with its legal approach. The consent judgment entered in this case prohibits Oxygen Plus from selling a product that is confusingly similar to *Boost's product*. ECF No. 28 at 3. And thus, to determine whether Oxygen Plus violated the consent judgment, the Court must compare Oxygen Plus's redesigned mask to *Boost's* mask, not to Oxygen Plus's original mask. Other courts seem to agree. *See, e.g.*, *Wolfard Glassblowing Co.*, 118 F.3d at 1322 ("The question . . . is whether [the defendant's] new lamp is a 'colorable imitation' of [the plaintiff's protected] lamp."); *Inverness Corp. v. Whitehall Labs.*, 710 F. Supp. 473,

473–74 (S.D.N.Y. 1989) (comparing the defendant's new product to the plaintiff's protected product).[10]

In sum, because Oxygen Plus was enjoined from using a "product design that is confusingly similar to the trade dress of Boost Oxygen's oxygen mask," and because Oxygen Plus's redesigned mask is not "confusingly similar to the trade dress of Boost Oxygen's oxygen mask," the Court will not hold Oxygen Plus in contempt.

One final point: A party can be held in contempt for violating a court order only if the order is "'clear and unambiguous.'" *Imageware, Inc. v. U.S. W. Commc'ns*, 219 F.3d 793, 797 (8th Cir. 2000) (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir. 1991)). The consent judgment in this case is not "clear and unambiguous." One problem is that the consent judgement does not "define[] exactly what [Boost's] trade dress consists of." 1 McCarthy, § 8.3, p. 8-17. Instead, the consent judgment merely refers to Boost's mask design, ECF No. 28 at 3, making the consent judgment impermissibly vague, 1 McCarthy, § 8.3, pp. 8-20–8-21.[11]

---

[10]The Court notes that *Toyo Tire* cited nothing in support of its contrary approach. And, in fact, the court did not just compare the defendant's new tire to the defendant's old tire, but went on to compare the defendant's new tire to the plaintiff's tire. *Toyo Tire & Rubber Co., Ltd.*, 281 F. Supp. 3d at 985–86.

[11]*See also, e.g., Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 768 (6th Cir. 2005) (reversing the grant of a preliminary injunction that enjoined the defendant from using the plaintiff's trade dress, because the district court did not "identify what particular elements or attributes comprise the protectable trade dress" (citation omitted)); *Yurman*

(continued...)

-23-

Another problem is that the consent judgment simply orders Oxygen Plus not to produce any mask that is confusingly similar to Boost's mask.  This "adds nothing to what the law already requires."  5 McCarthy, § 30.13, p. 30-49.  When "an injunction is so worded, then the factual elements of what exactly is [trade-dress infringement] must be re-hashed all over again in a contempt hearing. . . . [This] is useless in informing the defendant exactly what it is he must not do."  *Id.*[12]

In sum, then, the consent judgment (1) does not identify which features of Boost's mask are protected trade dress; (2) does not say why Oxygen Plus's original

---

[11](...continued)
*Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2d Cir. 2001) (noting the many problems that arise when a plaintiff fails to identify which aspects of its products comprise the protectable trade dress, including the problem that "'[c]ourts will . . . be unable to shape narrowly-tailored relief'" and "competitor[s]" will not "know what *new* designs would be subject to challenge" (citation omitted)); *Yellowfin Yachts, Inc. v. Barker Boatworks, LLC*, 237 F. Supp. 3d 1230, 1235–36 (M.D. Fla. 2017) ("A plaintiff's inability to identify and describe a distinctive, aesthetic feature exposes a trade-dress claim too vague to succeed. . . . [I]f [the plaintiff's] founder cannot describe with words the infringed feature, neither can an injunction.").

[12]*See also Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667, 669 (8th Cir. 1987) (vacating the portion of an injunction which forbade the defendant from using any materials "which are likely to confuse . . . the public into believing that [defendant's] products are associated with . . . [plaintiff's] products," as this was simply a command to obey the law and left the defendant "to guess at what kind of conduct would be deemed trademark infringement"); *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 984–85 (11th Cir. 1983) (reversing the grant of an injunction which enjoined the defendant from using a trade dress "which is confusingly similar to the trade dress or overall appearance" of the plaintiff's "or is likely to cause confusion therewith," reasoning that the injunction "'should be phrased in terms of objective actions, not legal conclusions'" (citation omitted)).

mask is confusingly similar to Boost's trade dress (most likely because the masks are not

confusingly similar); and (3) simply orders Oxygen Plus to obey the law.  This likely left

Oxygen Plus "uncertain as to what to do to avoid a charge of contempt and create[d] [a]

danger[] of anti-competitive overprotection."  1 McCarthy, § 8.3, p. 8-17.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT plaintiff's motion for contempt of court [ECF No. 72] is

DENIED.

  Dated: August 10, 2020                           <u>s/Patrick J. Schiltz  </u>
                                                       Patrick J. Schiltz
                                                       United States District Judge